IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

RONALD A. BRINSON,          )
                            )
          Petitioner,       )
                            )
     v.                     )          CV 315-015
                            )
HOMER BRYSON, Commissioner, )
                            )
          Respondent.       )
_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Coffee Correctional Facility in Nicholls, Georgia, brings the

above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant

pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that

Petitioner's § 2254 petition be **DENIED**, Petitioner's motions to expand the record be

**GRANTED** (doc. nos. 25-27), this civil action be **CLOSED**, and a final judgment be

**ENTERED** in favor of Respondent.

I.    **BACKGROUND**

This case challenges the validity of Petitioner's 2007 conviction for malice murder in

Laurens County Superior Court. (Doc. no. 10-8, pp. 17-18.) The Georgia Court of Appeals

provided the following description of facts underlying the offenses based on the evidence

offered against Petitioner at trial:

> At around 11:00 p.m., Brinson appeared at a friend's place of business in an
> intoxicated state and asked for a ride home. The friend drove him to the
> residence Brinson shared with the victim. Later that night, Brinson went to the

home of another friend where he admitted that he stabbed the victim, but claimed that she produced the knife first.

The following morning, the victim's parents attempted to reach her by phone but got no response to their repeated calls. They went to the Brinson residence and summoned the police. The victim's body was discovered in the bedroom; she had been stabbed seven times in the head, neck, and chest, resulting in her death.

Police confronted appellant later that day as he was walking through a residential neighborhood. He spontaneously told the officers to shoot him and he then volunteered to a passerby that he was being arrested for "first degree . . . murder." Appellant was placed in custody; *Miranda* rights were administered; and he told the police that the victim had picked up a steak knife, that he took it from her, and then stabbed her multiple times.

Brinson v. State, 713 S.E.2d 862, 863-64 (Ga. Ct. App. 2011)

At trial, Petitioner was represented by Catherine Leek and Rachel Caputo of the Dublin Judicial Circuit Public Defender's Office. (Doc. no. 10-8, p. 10; doc no. 10-21, p. 13.) On October 17, 2007, a jury found Petitioner guilty of malice murder and felony murder, and the trial court sentenced Petitioner to life imprisonment on the count of malice murder. (Doc. no. 10-21, pp. 14-15.) The trial court did not sentence Petitioner on the felony murder charge, finding that it lacked authority to sentence Petitioner on both charges. (Doc. no. 10-46, p. 12.) Petitioner moved for a new trial on October 30, 2007 upon which a hearing was held on August 21, 2008 where Petitioner was represented by new counsel, James Garner. (Doc. nos. 10-51, 10-52, 10-53.) The trial court denied the motion on December 2, 2010. (Doc. no. 10-25, p 13.)

James Garner also represented Petitioner on direct appeal and raised three enumerations of error:

(1)    The trial court erred in failing to grant Defendant's motion for mistrial, or in the alternative, failing to give a curative instruction to the jury

2

after family members of the victim made outbursts during trial.

    (2)     The trial court erred in allowing the indictment to go out with the jury for deliberations.

    (3)     The trial court erred in refusing to give an instruction to the jury regarding involuntary manslaughter.

(Doc. no. 10-1, p. 3.) On July 11, 2011, the Supreme Court of Georgia, on direct appeal, rejected Petitioner's contentions and affirmed his convictions. See Brinson, 713 S.E.2d at 865.

Petitioner filed a state habeas corpus petition *pro se* on January 11, 2012 in Lowndes County alleging eight grounds for relief:

    (1)     The jury's verdict is contrary to the weight of the evidence because the victim was the first aggressor by initially drawing the knife.

    (2)     The trial court erred in striking the third count from the indictment after the close of evidence.

    (3)     The trial court erred in allowing the indictment to go out with the jury for deliberations.

    (4)     The trial court erred in failing to give a curative instruction to the jury regarding three outbursts by the victim's family.

    (5)     The trial court erred in failing to give a curative instruction regarding the behavior of four prospective jurors during recess.

    (6)     The trial court erred in not granting the jury's request for eight written pattern jury instructions.

    (7)     Petitioner received ineffective assistance of appellate counsel.

         a.  Appellate counsel abandoned communication with Petitioner

         b.  The trial court should have conducted a hearing on Petitioner's motion to remove appellate counsel.

> c. Counsel failed to investigate newly discovered evidence of involuntary intoxication due to Petitioner's Zoladex prescription.
>
> d. Counsel had a conflict of interest due to his partnership with the presiding trial judge, Judge Smith, formed in December of 2011.

> (8) Petitioner was involuntary intoxicated from Zoladex injections for prostate cancer at the time of the offense.

(Doc. no. 10-4, pp. 4-6; doc no. 10-55, p. 8.)  Evidentiary hearings were conducted on May 17, 2012, and James Garner, Petitioner's appellate counsel, testified at the hearing.  (Doc. no. 10-5, pp. 4-16.)  The state habeas court denied relief in a final order filed on May 13, 2014. (Doc. no. 10-55.)

On May 28, 2014, Petitioner filed for a certificate of probable cause to appeal with the Georgia Supreme Court, seeking review of the state habeas court's decision.  (Doc nos. 10-56, 10-57.)  The Georgia Supreme Court denied the certificate due to Petitioner's failure to file a timely notice of appeal with the Lowndes County Superior Court Clerk on December 11, 2014.  (Doc. no. 10-62.)

Petitioner then timely filed the above-captioned § 2254 petition *pro se*.  (Doc. no. 1.) In the petition, Petitioner raises similar grounds for relief to those raised in his state habeas petition:

> (1) The jury's verdict is contrary to the weight of the evidence because the victim was the first aggressor by initially drawing the knife.

> (2) The trial court erred in striking the third count from the indictment without the consent of Petitioner after the jury was sworn in and allowing the indictment to go out with the jury during deliberations.

> (3) The trial court erred in failing to give a curative instruction to the jury regarding three outbursts by the victim's family.

(4)     The trial court erred in failing to give a curative instruction regarding the behavior of four prospective jurors in communicating with the victim's family during recess.

(5)     The trial court erred in not granting the trial counsel's request to give the jury eight written pattern jury instructions.

(6)     Petitioner received ineffective assistance of appellate counsel.

      a.     Appellate counsel abandoned communications with Petitioner

      b.     The trial court should have conducted a hearing on Petitioner's motion to remove appellate counsel.

      c.     Counsel failed to investigate newly discovered evidence of involuntary intoxication due to Petitioner's Zoladex prescription.

      d.     Counsel had a conflict of interest due to his partnership with the presiding trial judge, Judge Smith, formed in December of 2011.

(7)     Petitioner was involuntarily intoxicated from Zoladex injections for prostate cancer at the time of the offense.

(8)     The state attorney general failed to produce an answer to Petitioner's grounds for error in the state habeas proceeding.

(9)     The Supreme Court of Georgia erred in dismissing Petitioner's timely filed application for a certificate of probable cause.

(See generally doc. no. 1, pp. 7-21; doc. no. 2.)

## II.     STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

5

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170 (2011) (quoting Richter, 562 U.S. at 102; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Richter, 562 U.S. at 103 (petitioner must show the state court's

6

ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013) *cert. denied*, 133 S. Ct. 2742 (2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 301 (2010) (explaining that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (internal citation and punctuation omitted). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.") (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Petitioner Procedurally Defaulted the Claims in Grounds Two, Three, Four, Five, and Seven.

#### 1.    A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure.  28 U.S.C. § 2254(b)(1)(A) & (c).  A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."  Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).  The exhaustion requirement applies with equal force to all constitutional claims.  See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1353-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).  "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal issues.'"  Preston v. Sec'y, Florida Dep't of Corr., 785 F.3d. 449, 457 (11th Cir. 2015) (quoting Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007).  Furthermore, a petitioner's failure to exhaust his claims properly ripens

into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Alabama Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." <u>Smith v. Jones</u>, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." <u>Snowden v. Singletary</u>, 135 F.3d 732, 736 (11th Cir. 1998); <u>see</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1305 (11th Cir. 1999). To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." <u>See</u> <u>Bailey</u>, 172 at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal. <u>See</u> <u>Devier v. Zant</u>, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); <u>see also</u> <u>Black v. Hardin</u>, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."); <u>see also</u> <u>Waldrip v. Head</u>, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by

procedural default[.]").  In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51; <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

### 2.    Petitioner's Claims in Grounds Two, Three, Four, Five, and Seven Are Procedurally Defaulted Under O.C.GA § 9-14-48(d).

In Ground Two, Petitioner argues that the trial court erred in dismissing the third count in the indictment after the jury was sworn in and by allowing that redacted indictment to go out with the jury during deliberations.  (Doc. no. 1, p. 7.)  In Grounds Three and Four, Petitioner argues that the trial court erred in failing to give a curative instruction after three outbursts in trial by the victim's family and after four potential jurors had contact with the victim's family during a recess.  (<u>Id</u>.)  In Ground Five, Petitioner argues that the trial court erred in not giving the jury a written copy of the jury instructions, and in Ground Seven, Petitioner argues that he was involuntarily intoxicated from Zoladex injections for prostate cancer at the time of the crime.  (<u>Id</u>. at 7, 11.)  Respondent argues these claims are procedurally defaulted, as found by the state habeas court under O.C.G.A § 9-14-48(d), because they were not raised on direct appeal.  (Doc. no. 7-1, p. 9.)

The state habeas court found that Grounds Two, Three, Four, Five, and Seven were procedurally barred under O.C.GA § 9-14-48(d) because Petitioner did not timely raise these claims at trial and then assert them as error on direct appeal and alleged neither prejudice nor

cause for not doing so.  See Gaither v. Gibby, 475 S.E.2d 603, 604 (Ga. 1996); doc. no. 10-55, pp. 4-15  As to Ground Three, the state habeas court found that this claim was procedurally defaulted under O.C.GA § 9-14-48(d) because he failed to request a curative instruction at trial despite bringing the claim on appeal.  (See doc. no. 10-55, p. 6.)  As to Petitioner's latter claim in Ground Two that the trial court erred in allowing the indictment to go out with the jury, Petitioner raised this claim on direct appeal but failed to make a timely objection at trial.  (Doc. no. 10-45, p. 11.)  As to the remaing claims in Grounds Two, Four, Five, and Seven, the record shows that he failed to bring any of these grounds of error on direct appeal.  (See doc. no. 10-3.) Because the state court clearly relied on O.C.GA § 9-14-48(d) and applied it properly when finding these claims to be procedurally barred, the Court must defer to this ruling that was based on independent and adequate state law grounds.  See Boyd, 697 F.3d at 1336.  Accordingly, the Court hereby finds that Petitioner procedurally defaulted Grounds Two, Three, Four, Five, and Seven in the federal habeas petition.

### 3. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claims in Grounds Two, Three, Four, Five, and Seven, and the Miscarriage of Justice Exception Does Not Apply.

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the

errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

For example, procedural default does not preclude federal habeas review when (1) the claim of ineffective assistance of trial counsel is a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013); Martinez v. Ryan, 132 S. Ct. 1309, 1318-20 (2012).

The only justification Petitioner provides for failing to raise these claims at trial and on appeal is ineffective assistance of his appellate counsel and a reference to Fed. R. Crim. P. 52. (Doc. no. 1, p. 21.) However, as discussed *infra* § B.2, Petitioner did not receive ineffective assistance because appellate counsel brought only the most meritorious issues on appeal. Furthermore, Fed. R. Crim P. 52 does not excuse the lack of an objection at trial or demonstrate cause or prejudice for Petitioner defaulting his claims at the state level. Thus, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default of the claims in Grounds Two, Three, Four, Five, and Seven.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436

F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496. Petitioner does not submit any evidence that he is probably innocent of the crimes for which has been convicted. To the contrary, the weight of the evidence supports his conviction as explained in *infra* § C.

Accordingly, Petitioner's claims in Grounds Two, Three, Four, Five, and Seven in the instant § 2254 petition have been defaulted and provide no basis for federal habeas relief.

**B.** **Pursuant to AEDPA, This Court Defers to the State Court's Decision Denying Petitioner's Ineffective Appellate Counsel Claims in Ground Seven.**

**1.** **Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.**

Ineffective assistance of appellate counsel claims are subject to the same two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor

14

of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise a frivolous argument on appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue. Philmore, 575 F.3d at 1264. Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985); see Brooks v. Comm'r, Alabama Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694) (internal citation omitted).

As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293  (11th Cir. 2004) (citations omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable").  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell, 535 U.S. 685 at 699.  Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem review is doubly so."  Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas").  Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial."  Richter, 562 U.S. at 105; see also Woods v. Donald, 135 S. Ct. 1372, 1376 (2015).

## 2. The State Court's Application of <u>Strickland</u> to Ground Six Was Not Objectively Unreasonable.

Petitioner argues in Ground Six of his § 2254 petition that his appellate counsel was ineffective because (1) he abandoned communication with Petitioner; (2) the trial court failed to remove him after Petitioner filed a motion; (3) appellate counsel did not investigate newly discovered evidence of involuntary intoxication; and (4) appellate counsel had a conflict of interest due to his partnership with the presiding trial judge formed in December of 2011. (<u>See</u> doc. nos. 1, pp. 9-10; doc. no. 4, pp. 12-14.) The state habeas court found that Petitioner's ineffective assistance of appellate counsel claims lacked merit under <u>Strickland</u>. (Doc. no. 8-2, pp. 6-10.)

### a. Counsel's Alleged Abandonment of Communication

First, Petitioner argues that appellant counsel, James Garner, was ineffective by abandoning communication for thirteen months with Petitioner and failing to include grounds of error that Petitioner thought were meritorious. (Doc. no. 1, p. 9.) At the state habeas hearing, Mr. Garner testified that before representing Petitioner he had tried over fifty felony cases, handled hundreds of guilty pleas, argued five to ten appeals, and that half of his legal practice was devoted to criminal defense. (Doc. no. 10-5, p. 14.) Mr. Garner further testified that he reviewed the trial transcript thoroughly, met with Petitioner and solicited his input, and spoke with trial counsel. (<u>Id.</u> at 15-16.) Mr. Garner thought the case was tried well by counsel and saw very little to raise as error. (<u>Id.</u> at 16-17.)

Mr. Garner testified he raised the most viable issues he saw in the record which included the outburst by the victim's family, the denial of the request to charge on

involuntary manslaughter, and the failure to redact the grand jurors' names. (Id.) Mr. Garner considered the issues identified by Petitioner in his letter but ultimately decided that he could not raise them in good faith. (Id. at 17.) Mr. Garner testified that Petitioner steadily flooded him with a stream of rambling, redundant letters, he corresponded with him a few times to let him know the status of proceedings in his case, and he communicated with him adequately to form the most viable issues on appeal. (Id. at 15, Doc. no. 10-6, p. 2.)

The state habeas court found that Mr. Garner did not abandon Petitioner or refuse to communicate with him and that he had sufficient contact to obtain his input on the issues to raise on appeal. (Doc. no. 10-55, p. 9.) In light of Mr. Garner's testimony at the hearing, Petitioner cannot show that this was an unreasonable determination of fact by the state habeas court. Further, the trial court identified Strickland as the applicable standard and applied it reasonably to its finding that Mr. Garner acted competently and sufficiently in consulting Petitioner but choosing only to raise the issues for which there was a good-faith argument to be made. (See doc. no. 10-55, pp. 9, 13.) Finally, the state habeas court did not unreasonably apply Strickland in finding that appellate counsel had no duty to raise every non-frivolous issue on appeal, and thus was not deficient in refusing to raise the issues identified by Petitioner that appellate counsel deemed to be frivolous. (See id.) Accordingly, Petitioner's argument that counsel abandoned communication with him does not present a basis for relief.

### b. Trial Court's Failure to Remove Appellant Counsel

Petitioner argues that he received ineffective assistance when he filed a motion to remove his counsel in 2009, but the state trial court failed to act upon it. (Doc. no. 1, p. 9.)

Although Petitioner frames this claim as an ineffective assistance claim, Petitioner mainly takes issue with the trial court denying a hearing on the motion or the right to proceed *pro se* on appeal. (Id.; Doc. no. 4, p. 13.)

First, as noted above, the state habeas court found that counsel acted reasonably in reviewing the trial transcript and only raising the most meritorious issues on appeal, such that Petitioner did not suffer any prejudice from counsel's failure to raise every non-frivolous issues on appeal. (Doc. no. 10-55, p. 13.) The state habeas court went on to reason that there was no prejudice from the trial court's failure to hold a hearing to replace Mr. Garner or rule upon the motion, presumably because Mr. Garner's performance was perfectly adequate. (Id. at 14.) In making this dermination, the state habeas did not unreasonably apply Strickland. The state habeas court recognized that Petitioner had no right to a meaningful relationship with his attorney or any right to have every nonfrivolous issue raised on appeal. Morris v. Slappy, 461 U.S. 1, 13 (1983); Jones v. Barnes, 463 U.S. 745, 754 (1983).

The finding of the state habeas court that the motion was meritless is further supported by the procedural posture of the motion. Petitioner's hearing on his motion for new trial occurred on August 21, 2008 and was denied on December 3, 2010. (Doc. no. 10-51, p. 4; Doc. no. 10-25, p. 13.) Petitioner filed his motion on December 17, 2009, a time in which oral argument had been held and the parties were simply awaiting a ruling on the motion for new trial. (Doc. no. 19, p. 3.) Petitioner's motion contains no real substance and simply alleges boilerplate reasons for why Mr. Garner was ineffective such as "counsel acted beyond the boundaries of professional competence, the failure of such duties of consulting on important decisions, keeping client informed of important developments, bringing

19

knowledge and skill to proceedings [sic]." (Id.)  At the time Petitioner filed the motion, there were no important developments in his case, and there was nothing to be consulted about.

In finding that Petitioner's rambling and uninformative motion did not provide a basis for relief, the state habeas court did not apply Strickland unreasonably.  Further, Petitioner points to no established Supreme Court precedent showing that failure to obtain a ruling on a procedural motion violates the Constitution.  See Owens v. McLaughlin, 733 F.3d 320, 329 (11th Cir. 2013) (denying a petitioner's § 2254 claim that a twenty-five year delay for a ruling on a motion for new trial was unconstitutional).  Finally, there is no right to self-representation post-trial, thus any claim that he was denied a constitutional right to proceed *pro se* is without merit.  Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 164 (2000). Accordingly, petitioner's claim in regard to his 2009 motion does not afford a basis for relief.

Petitioner also seems to argue that the trial court's failure to rule upon his "motion to remove appellant attorney" filed on April 8, 2011 was constitutional error.  Despite only mentioning the 2009 motion in his argument, (doc. no. 1, p. 9; doc. no. 4, p. 13), Petitioner has attached this motion to his briefs, and the Court will construe the same arguments made in relation to his 2009 motion as applying to the 2011 motion.  It appears that this motion, filed during the pendency of his direct appeal, was never acted upon until May 18, 2015 when it was denied as untimely and moot.  (Doc. no. 19, p. 2)  It is unclear whether Petitioner raised the effective denial of the 2011 motion at the state habeas level because the state habeas court only references the 2009 motion.  (See doc no. 10-55, p. 14.)

In the 2011 motion, Petitioner argued that his appellant attorney should be removed and that he should be allowed to proceed *pro se*. (Doc. no. 4, p. 15.) Petitioner further averred that the Supreme Court of Georgia would not recognize his motions until he had a letter stating that his appellant counsel had been removed. For the same reasons cited above, Petitioner has not shown a violation of <u>Strickland</u> because his counsel raised the most meritorious grounds on appeal. Further, Petitioner did not have a right to proceed *pro se* on appeal. <u>Martinez</u>, 528 U.S. at 164. Accordingly, petitioner's claim in regard to his 2011 motion does not afford a basis for relief.

Finally, Petitioner has filed two motions to expand the record with documents from the trial court, arguing these documents show the trial court's admittance that it did not rule upon the motions. (Doc. nos. 25, 27.) The documents that Petitioner desires to add to the record include the 2009 and 2011 motions discussed above, an order from the Superior Court denying the 2011 motion as moot dated May 18, 2015, a letter from a law assistant in the Superior Court addressing the 2009 motion, and an order from the Superior Court denying Petitioner's motion to compel the law assistant to explain why the court had not acted on the 2011 motion. (<u>See</u> <u>id.</u>) The 2009 motion is currently in the record, and Petitioner has not argued that he was diligent in attempting to introduce evidence relevant to the 2011 motion into the record. Further, the other evidence post-dates the state habeas court decision and is not relevant to determining whether the state court decision warrants deference. Nevertheless, out of an abudance of caution, the Court **GRANTS** Petitioner's motions to expand the record but finds that the exhibits do not change the Court's analysis. (Doc. nos. 25, 27.)

As discussed above, the 2009 and 2011 motions do not provide a basis for finding that a constitutional violation occurred. Petitioner also argues the other exhibits show that the trial court did not act upon his motions. (Doc. no. 25, p. 1; doc. no. 27, p. 1.) As discussed above, Petitioner has not demonstrated that he had a constitutional right to have his motion ruled upon, nor has he shown that he was denied effective assistance of counsel by the trial court failing to remove his appellant counsel. Thus, Petitioner's evidence does not change the Court's finding that Petitioner has not demonstrated an unreasonable application of established Supreme Court precedent.

In sum, Petitioner cannot show that the state habeas court reached a verdict contrary to, or involved an unreasonable application of established Supreme Court precedent as to his claims regarding the 2009 and 2011 motions. Accordingly, neither of these claims provide a basis for relief under 28 U.S.C § 2255.

### c. Counsel's Alleged Failure to Investigate Newly Discovered Evidence

Petitioner also argues that his appellant counsel was ineffective for failing to investigate newly discovered evidence that he was involuntarily intoxicated at the time of the murder. (Doc. no. 1, p. 9.) Petitioner contends that Zoladex injections for his prostate cancer caused severe hot flashes and mood swings and that he was also prescribed Prozac for his mood swings. (Id.) According to Petitioner, these medications "made [him] more fearful for [his] life," and he told counsel how these medications affected his behavior but counsel failed to act upon it. (Id. at 11.)

The state habeas court found Petitioner's contention that counsel failed to investigate this "newly discovered" evidence lacked a factual basis. (Doc. no. 10-55, p. 14.)

Specifically, the state habeas court found that counsel followed up with Petitioner about the medications he was taking but concluded the argument had no chance of prevailing in light of Petitioner's admission that he was voluntarily intoxicated at the time of the crime and that he acted in self-defense. (Id.) This finding comports with counsel's testimony at the state hearing. (Doc. no. 10-6, pp. 2-3.) The state habeas court further found that the record contradicted Petitioner's contention of the evidence being new because he discussed these medications with the psychologist during the pretrial mental health evaluation. (Doc. no. 10-55, p. 14.) The record confirms that Petitioner admitted to alcohol abuse the day before the murder, which occurred early in the morning on August 19, 2006, and also told the psychologist that his prostate cancer treatment made him moody and gave him hot flashes. (Doc. no. 10-10, p. 4.) In light of the evidence before the state habeas court, this factual determination was not unreasonable and in fact, was fully supported by the record before it. Thus, any contention that counsel failed to investigate this "newly discovered" evidence is without merit.

Further, the state habeas court's denial of Petitioner's <u>Strickland</u> claim as to the prostate cancer treatment is also without merit. Appellate counsel testified that he considered the involuntary intoxication argument proposed by Petitioner but found it had little to no basis given the proof at trial that he was voluntarily intoxicated and his contention that he was acting in self-defense. (Doc. no. 10-6, pp. 2-3.) Apellate counsel was not unreasonable in failing to bring this frivolous claim clearly contradicted by the record, nor was Petitioner prejudiced by the absence of such a frivolous claim on appeal. Accordingly, Petitioner's

<u>Strickland</u> claim as to the alleged evidence of involuntary intoxication does not provide a basis for relief.

Finally, Petitioner has also filed a motion to expand the record with a VA medical record printout relating to his prostate cancer treatment with Zoladex. (Doc. no. 26.) According to Petitioner, this record supports his assertions that Zoladex causes hot flases, mood swings, panic attacks, and anxiety attacks, and thus, he was involuntarily intoxicated at the time of the crime. (<u>Id.</u> at 1.) However, the only symptom this record mentions is hot flashes. (<u>Id.</u> at 4.) Although Petitioner has not argued he was diligent in attempting to introducte the evidence at the state habeas proceeding, the Court **GRANTS** the motion out of an abundance of caution. (Doc. no. 26.)

Considering this record, it does not affect the Court's analysis that the evidence was not "newly discovered," and Petitioner's counsel was well aware of his treatments, but reasonably concluded that any such claim of involuntary intoxication would be completely meritless. Accordingly, Petitioner's motion to expand the record has no effect on the court's analysis, and Petitioner's claim that he was denied effective assistance of counsel for failure to introduce an involuntary intoxication defense is without merit.

### d.  Counsel's Alleged Conflict of Interest

Finally, Petitioner argues that his appellate counsel had a conflict of interest because he formed a partnership with the presiding trial judge in December of 2011. (Doc. no. 4, p. 14.) Petitioner alleges that "it takes years to trust someone to become a partner, to form a partnership," insinuating that the conflict arose prior to December 2011, a time after the completion of his direct appeal. (<u>Id.</u>) The state habes court found that this claim lacked a

factual basis because appellate counsel and Judge Smith had no partnership or other business relationship at the time of representation. (Doc. no. 10-55, p. 11.) This factual finding is supported by appellate counsel's testimony that while Judge Smith was on the bench, he had no relationship with him whatsoever. (Doc. no. 10-6, p. 4.) Accordingly, the state habeas court's factual determination in this regard is fully supported by the record and not unreasonable. Accordingly, this argument by Petitioner is without merit and does not afford a basis for relief.

### C. Pursuant to AEDPA, This Court Defers to the State Court's Decision Denying Petitioner's Weight of the Evidence Claim in Ground One.

In Ground One, Petitioner alleges the verdict is contrary to the law and the evidence because the elements of malice murder were not shown. (Doc. no. 1, p. 7.) Petitioner argues that the victim was the aggressor in drawing the knife and that he was acting in self-defense when he killed his wife. (Doc. no. 4, pp. 2-3.) Alternatively, Petitioner argues he was acting out of passion, seemingly contending that he was only guilty of voluntary manslaughter. (Id.)

In denying this ground, the state habeas court adopted the ruling by the Georgia Supreme Court. (Doc. no. 10-55, p. 3.) The Georgia Supreme Court, on direct appeal, found that "in the light most favorable to the verdict, the evidence was sufficient to authorize a rational trier of fact to find [Petitioner] guilty beyond a reasonable doubt of malice murder" and cited Jackson v. Virginia, 443 U.S. 307(1979). (Doc. no. 10-3, p. 1.) Supporting this holding, the Georgia Supreme Court cited Petitioner's statement to the police that the victim had picked up a steak knife, he took it from her, and then stabbed her multiple times. (Id.)

The Supreme Court held in <u>Jackson</u> that a conviction only comports with the Due Process Clause if the evidence produced at trial is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense in question. <u>Jackson</u>, 443 U.S. at 316.  The key inquiry is whether, "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> at 319.  Along with these basic principles regarding sufficiency of the evidence, the Court is also guided by AEDPA's mandate that the state court's factual determinations are presumptively correct absent rebuttal by clear and convincing evidence.  28 U.S.C. 2254(e)(1).

In Georgia, murder is defined as occurring when a person "unlawfully and with malice aforethought, either express or implied, causes the death of another human being." O.C.G.A. § 16-5-1(a).  Malice can be either (1) express malice which is "deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof,"; or (2) implied malice defined as "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart."  O.C.G.A. § 16-5-1(b).  In contrast, voluntary manslaughter is when a person

> [C]auses the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

O.C.G.A. § 16-5-2(a).

26

Here, Petitioner cannot show by clear and convincing evidence that the Georgia Supreme Court's determination of the facts was unreasonable in light of the evidence produced at trial. The statement of facts given by the Georgia Supreme Court perfectly comports with Petitioner's own statement to the police. Further, the court did not reach a result contrary to <u>Jackson</u> or unreasonably apply the <u>Jackson</u> standard because the facts clearly show that Petitioner gained control of the knife and was not acting in self defense at the time he killed the victim. Further, a rational jury easily could have a supported a verdict of murder given the victim's seven stab wounds and Petitioner's own statements that he killed the victim due to anger because she pulled the knife, often called the police, and locked him out of the house. (See doc. no. 10-47,pp. 1, 4, 15.) Petitioner insinuates that the verdict is contrary to the law because it was not premeditated but "[p]remeditation is not an element of murder in Georgia, and the malice which is required for murder can be formed in an instant so long as it is present at the time of the act of killing." <u>Parks v. State</u>, 330 S.E.2d 686, 696 (1985).

Further, under Georgia law, "[w]hether or not a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, reducing the offense from murder to manslaughter, is generally a question for the jury." <u>Anderson v. State</u>, 285 S.E.2d 533, 535 (Ga. 1982). In this case, a rational jury could have found that the victim's act of producing the steak knife was not considerable provocation, especially in the absence of any cuts or physical harm to Petitioner. (Doc. no. 10-47, p. 14; Doc. 10-39, p. 19.) To the extent that Petitioner is arguing he should have been convicted of involuntary manslaughter, Georgia law is clear that involuntary manslaughter is

inapplicable where a person asserts self-defense.  See Lamon v. State, 390 S.E.2d 582, 583 (Ga. 1990)

In sum, Petitioner's arguments are woefully inadequate to establish that the state court unreasonably applied Jackson or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented.  Indeed, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual determinations.  Petitioner has therefore not shown that the state court was objectively unreasonable in its determination that the evidence at trial was clearly sufficient for a jury to conclude beyond a reasonable doubt that he was guilty.  Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground One challenging the sufficiency of the evidence.

**D.    Petitioner's Claims in Grounds Eight and Nine Attacking Alleged Procedural Infirmities in the State Habeas Proceeding Do Not State a Claim for Relief.**

In Ground Eight, Petitioner alleges that the Attorney General failed to respond to his ground of error regarding the trial court's failure to remove appellate counsel in the state habeas proceeding, and he was prejudiced by the court entering a final order before being able to rebut the state's position on that ground.  (Doc. no. 4, p. 23; doc. no. 1, p. 12.)  In Ground Nine, Petitioner alleges that the Georgia Supreme Court improperly dismissed Petitioner's timely filed application for a certificate of probable cause.  (Doc. no. 1, p. 13; doc. no. 4, 24.)

"[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for

habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); see also Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that claim premised on alleged errors by state habeas court "[went] to issues unrelated to the cause of petitioner's detention," and thus "[did] not state a basis for habeas relief"). Both Ground Eight and Ground Nine allege procedural defects relating to the state habeas proceeding and Petitioner's application for a certificate of probable cause. As these claims challenge collateral proceedings and not Petitioner's conviction and sentence, they cannot form a basis for relief in this petition under 28 U.S.C. § 2254 and are subject to denial.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2254 petition be **DENIED**, Petitioner's motions to expand the record be **GRANTED** (doc. nos. 25-27), this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 18th day of December, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA